UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWARD ODICHO, | |
| Plaintiff, | No. 17 C 6995 |
| v. | Judge Thomas M. Durkin |
| SWEDISH COVENANT HOSPITAL and JANE LEE, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Edward Odicho alleges Swedish Covenant Hospital failed to pay him for lunch breaks when he was employed there as a pharmacist, in violation of the federal Fair Labor Standards Act and its Illinois counterpart (Counts I & II). Odicho also alleges that when he complained about this practice he was retaliated against by having his shifts understaffed and disciplinary warnings added to his employment record (Counts III & IV). Finally, Odicho brings a defamation claim against the Hospital and his former supervisor, Jane Lee, for making the accusations that were the basis of the disciplinary warnings against him (Count V). Defendants have moved to dismiss all counts against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 10. For the following reasons, that motion is denied in part and granted in part.

**Legal Standard**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

**Background**

Odicho alleges that he began working at the Hospital as a clinical pharmacist in March 2013. R. 1 ¶ 7. He always met or exceeded performance expectations. *Id.* ¶ 8.

Odicho was paid on a hourly basis, and the Hospital's policy required employees who worked more than 7.5 hours in a day to take an unpaid 30 minute meal break, which was automatically deducted from paychecks. *Id.* ¶¶ 9-10. Odicho alleges that he was often forced to work through his meal breaks, yet 30 minutes of pay was still deducted from his check. *Id.* ¶ 11.

Around January 31, 2017, Odicho complained about the underpayment to Lee. *Id.* ¶ 13. She refused to fix the problem and suggested that Odicho should not have a problem with the practice. *Id.* Shortly thereafter on February 7, 2017, Lee issued a disciplinary warning to Odicho, accusing him of behaving aggressively toward her. *Id.* ¶ 14.

A few months later around March 3, 2017, Odicho again complained to Lee about the underpayment of his wages. *Id.* ¶ 15. Lee again issued a disciplinary warning to Odicho on March 14, 2017, this time accusing him of inappropriately touching a co-worker. *Id.* ¶ 16. Odicho alleges that the co-worker denied the accusation. *Id.*

Several months later on June 27, 2017, Odicho complained during his performance review about understaffing at the Hospital's pharmacy. *Id.* ¶ 17. Three days later on June 30, 2017, Lee issued another disciplinary warning and sought to have Odicho suspended, based on the allegation that he left a cabinet open. *Id.* ¶ 18.

Odicho then sent a letter to Lee's supervisor on July 3, 2017, complaining about the deductions from his paychecks, and retained an attorney who contacted the Hospital's human resources department about the issue. *Id.* ¶ 20. The human

resources department investigated the issue, and around July 18, 2017, the Hospital paid Odicho $1,909.04 for 99 unpaid meal breaks. *Id.* ¶¶ 21-22. The Hospital did not provide documentation demonstrating that this was the entirety of the wages Odicho was owed. *Id.* ¶ 22.

Lee continued to understaff Odicho's shifts. *Id.* ¶ 23. Odicho alleges that this understaffing "created an unsafe environment for the Hospital's patients." *Id.* ¶ 24. Odicho resigned because he "could not risk putting the patient's health and safety at risk because of long hours with no support." *Id.*

## Analysis

### I. Wage Claims (Counts I & II)

The Fair Labor Stanards Act provides that employers must pay overtime compensation. Employers who violate that statute are "liable to the employee . . . in the amount of their . . . unpaid overtime compensation . . . and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An employer may avoid the imposition of liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation." 29 U.S.C. § 260.

Illinois law also imposes certain requirements on payment of wages. The Illinois statute does not include a liquidated damages provision. Instead, it provides for a 2% penalty. 820 ILCS 105/12(a).

Defendants argue that Odicho's wage claims should be dismissed because they have already repaid the wages allegedly withheld, his complaint fails to allege that the Hospital acted in bad faith to justify liquidated damages, and the 2% penalty is de minimis in this case. The Court disagrees that Odicho has failed to allege that his wages were intentionally withheld such that liquidated damages are not available to him. He alleges that when he first complained to Lee, she either stated or implied that this was not a problem. Further, Odicho has not conceded that the $1,909.04 he was paid accounts for the entirety of his withheld wages. Odicho has plausibly alleged that his wages were intentionally withheld.

Defendants also argue that the relief Odicho seeks is de minimis such that Odicho has no legally cognizable damages. To the extent that Defendants argue that $1,909.04 worth of liquidated damages is de minimis, the Court disagrees. It may be that the 2% penalty the Illinois Wage Act imposes on violations is de minimis in this case. But as discussed, the precise amount of Odicho's withheld wages has yet to be determined. He worked at the Hospital for more than four years, so it is plausible that he worked through lunch more than 99 times. Furthermore, since Odicho's federal claim will proceed, the potential de minimis nature of his additional relief under Illinois law is not a reason to dismiss that claim. Thus, the Court does not need to decide whether 2% of $1,909.04 is de minimis.

Therefore, Defendants' motion to dismiss Counts I and II is denied.

## II.     Retaliation (Counts III & IV)

Odicho alleges that Defendants retaliated against him by filing disciplinary warnings against him and constructively discharging him. With respect to the alleged constructive discharge, Odicho argues that he was forced to work understaffed shifts, which caused him to put patients' lives at risk.

### A.     Constructive Discharge

Stating a claim for constructive discharge is a "high bar," *Porter v. Erie Foods Intern., Inc.*, 576 F.3d 629, 639 (7th Cir. 2009), requiring allegations that plausibly demonstrate an "intolerable" or "unbearable" work place. *See U.S. ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 716 (7th Cir. 2014); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014). The Court agrees with Odicho that if the Hospital forced him into the position of putting patient lives at risk, that would be sufficiently "intolerable" to plausibly allege constructive discharge. The Hospital argues that the allegation that it would risk patient lives in order to retaliate against one employee for a claim for less than $2,000 strains credulity. It might be irrational conduct, but human beings have proven capable of acting according to a wide range of irrational motives. Thus, the Hospital's argument that it is against its interest to act in such a manner is an insufficient basis to dismiss Odicho's constructive discharge claim.

Odicho, however, has not plausibly alleged that patient lives were put at risk. Odicho alleges that the understaffing "created an unsafe environment" for patients, and "he could not risk putting the patient's health and safety at risk." There is a

6

significant (and claim dispositive) difference between understaffing that decreases the quality of patient care, and understaffing that puts patient lives at risk. Although Odicho alleges a decrease in quality of care (i.e., a "health and safety risk"), nowhere does he allege that patients were at risk of death. Moreover, even if he had used the words "risk of death" in his complaint, as opposed to merely "health risk," Odicho would have to explain in greater detail how lives were actually at risk to make his constructive discharge allegation plausible.

There is also a material difference between understaffing that puts patient lives at risk, and understaffing that puts patient lives at risk by constricting the ability of particular staff (i.e., Odicho) to do their jobs. Even if the Hospital's understaffing put patient lives at risk, Odicho makes no allegations as to how the understaffing caused him to be personally responsible for care that risked patients' lives. Odicho alleges that the increased risk came from "long hours with no support," but this is just another way of describing understaffing. Although this circumstance might have caused Odicho to be tired and less focused, he has not explained how this caused patients' lives to be at risk. As the Seventh Circuit held in *Absher*, merely working for a health care employer who provides substandard care does not meet the standard for constructive discharge. 764 F.3d at 716 (describing working for a healthcare facility that "provides substandard care" as "frustrating," but not meeting the standard of "unbearableness" required to state a constructive discharge claim). Odicho has not alleged how the understaffing caused him to be in a position of providing substandard care. Absent such allegations,

7

Odicho has not plausibly alleged how the work environment was made "intolerable" for him personally such that he was constructively discharged.

Therefore, Counts III and IV are dismissed to the extent they rely on a constrictive discharge theory.

   B.    **Disciplinary Warnings**

Odicho also alleges that the Hospital is liable for retaliation because Lee, his supervisor, made repeated false disciplinary warnings against him. *See* R. 1 ¶ 35. The Hospital argues that "written reprimands do not constitute an adverse employment actions." R. 10 at 11. It is true that in the context of a discrimination claim, "an adverse employment action [is] a materially adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or an alternation of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017). It might be that disciplinary warnings do not meet this standard. But the standard for an adverse employment action in the context of a retaliation claim is not so high. All that is required to state a retaliation claim is an action that would "have dissuaded a reasonable worker from making or supporting a charge" of illegal conduct. *See Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).[1] Although the

---

[1] The Supreme Court instituted this standard in the case of a retaliation claim under Title VII. Although the Court has not found a Seventh Circuit case applying this standard to a retaliation claim under the Fair Labor Standards Act, other circuits courts have held that it does so apply. *See McBurnie v. City of Prescott*, 511 Fed. App'x 624, 625 (9th Cir. 2013); *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 Fed. App'x 524, 531-32 (6th Cir. 2011); *Mullins v. City of New York*, 626

8

Seventh Circuit has held that "[u]nfair reprimands or negative performance reviews, unaccompanied by tangible job consequences, do not suffice," *Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016), it has also "declined to rule categorically that warnings cannot be adverse actions." *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849 (7th Cir. 2007). Moreover, the Seventh Circuit case law holding that unfair reprimands or negative performance reviews are insufficient to state a claim in the *retaliation* context, traces back to cases holding that such allegations are insufficient in the *discrimination* context, which, as discussed involves a higher standard. *See Boss*, 816 F.3d at 919 (citing *Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010) (citing *Grube v. Lau Indust., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001))). When confronted with allegations of reprimands and disciplinary warnings, the Seventh Circuit, following the Supreme Court, has repeatedly emphasized that context matters. *See Poullard v. McDonald*, 829 F.3d 844, 857 n.3 (7th Cir. 2016) ("the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." (citing *Burlington Northern*, 548 U.S. at 69)); *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 n.31 (7th Cir. 2012) ("We believe that, *given the circumstances surrounding* the employer's actions in this case, the district court correctly concluded that the written warnings and the placement of Mr. Harper on probationary status did not rise to the level of a materially adverse employment action."); *Benuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652, 665 (7th Cir. 2011) ("Generally, written warnings, standing alone, do not

---

F.3d 47, 53 (2d Cir. 2010); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008).

9

constitute materially adverse actions; the post-complaint cautionary notice does not trouble us. But context is a crucial consideration in Title VII retaliation actions, and in this context, we agree with Benuzzi that the sweeping Notice of Disciplinary Action citing petty misdeeds that allegedly occurred months ago, coupled with the unexplained memorandum restricting her access to Pershing, 'could constitute an adverse action within the meaning of the direct method of proving retaliation[.]'").

Here, Odicho was accused of aggressive and threatening behavior toward co-workers. These accusations came days after his wage complaints. The seriousness of the accusations combined with their timing is sufficient to plausibly allege that the accusations would dissuade a reasonable employee from complaining about illegal conduct. Defendants' motion to dismiss Counts III and IV on the basis of the internal accusations is denied.

### III. Defamation (Count V)

Lastly, Odicho alleges that Defendants are liable for defamation because Lee accused him of "behaving aggressively toward her," and "inappropriately touching a co-worker." R. 1 ¶¶ 14, 16. "To prove a defamation claim [under Illinois law], the evidence must show that a defendant made a false statement concerning the plaintiff, that there was an unprivileged publication of the defamatory statement to a third party by the defendant, and that the plaintiff suffered damages as a result." *Madison v. Frazier*, 539 F.3d 646, 653 (7th Cir. 2008). "Some statements are considered defamatory per se because they are so obviously and materially harmful to a plaintiff that his injury may be presumed and he does not need to prove actual

damages to recover." *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005). "In Illinois, there are five categories of statements that are defamatory per se: (1) statements imputing the commission of a crime; (2) statements imputing infection with a loathsome communicable disease; (3) statements imputing an inability to perform or want of integrity in performing employment duties; (4) statements imputing a lack of ability or that otherwise prejudice a person in his or her profession or business; and (5) statements imputing adultery or fornication." *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006).

With respect to statements regarding "employment duties" and professional prejudice, the Seventh Circuit has held that such statements must have "been related to job performance; to succeed, the plaintiff must have been accused of lacking *ability in his trade* or doing something bad *in the course of carrying out his job*." *Cody*, 409 F.3d at 857 (emphasis in original). "Conversely, attacks related to personal integrity and character have not been deemed defamatory *per se*." *Id.* at 858. "In some cases, personal integrity is so intertwined with job skills, that an attack upon it could constitute defamation *per se*." *Id.* But although "accusations suggest[ing] that [a plaintiff] lacks certain qualities desirable in an employee, . . . might indeed make it harder for [the plaintiff] to get a job, . . . the increased difficulty in finding employment would be due to [the plaintiff's] perceived bad character traits, not because of his perceived inability to do the job." *Id.* In such a circumstances, the plaintiff "must plead and prove actual damages to recover for defamation." *Id.*

11

Here, Lee's alleged statements that Odicho "behave[ed] aggressively toward her," and "inappropriately touch[ed] a co-worker," impugn Odicho's personal integrity not his ability to do his job. The statements imply that Odicho had poor personal qualities, which would be a problem for any job. But the Seventh Circuit held in *Cody*, this kind of statement is not defamation per se. Indeed, the Illinois Appellate Court has specifically held that a "generic description of verbal and physical aggression, and an isolated example of grabbing someone's arm to get his attention, may not be flattering statements, but they are not so harmful that they would lower plaintiff's reputation in the eyes of the community and deter the community from associating with her." *Dobias v. Oak Park & River Forest High Sch. Dist. 200*, 57 N.E.3d 551, 572 (Ill. App. Ct. 2016). This reasoning applies equally in this case.

To the extent Odicho argues that Lee's statement about inappropriately touching a co-worker constitutes defamation per se because it is an accusation of a crime, the alleged statement does not meet the relevant standard. To constitute defamation per se as an accusation of a crime, a statement must "fairly impute the commission of a crime in the eyes of the reasonable reader." *Dobias*, 57 N.E.3d at 570. According to the Illinois Appellate Court, although an "inappropriate touch" might "check all the boxes for the elements of a battery and even aggravated battery, it does not automatically follow that this would be fairly imputed from the standpoint of the reasonable reader." *Id.* at 571. Thus, Odicho has failed to allege defamation per se under this theory either.

Since Odicho has failed to allege defamation per se, he must plausibly allege "special damages," *Tuite*, 866 N.E.2d at 121, or in other words "actual damage of a pecuniary nature." *Bryson v. News Am. Pubs., Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). "[I]t is enough to identify a concrete loss," to identify "special damages." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013).

Here, Odicho has alleged only that Lee's statements caused him to suffer "damage to his reputation, emotional distress, humiliation, and embarrassment." R. 1 ¶ 47. He has not alleged that Lee's statements caused him to lose money or potential employment opportunities. It is difficult to see how the statements could have had such an effect since Odicho was not fired based on Lee's accusations, and he instead quit. Absent allegation of actual damages, Odicho's defamation claim cannot proceed.

**Conclusion**

For the foregoing reasons, Defendants motion to dismiss, R. 10, is denied in part and granted in part. It is denied with respect to Counts I, II, III, and IV, and granted with respect to Count V. Count V is dismissed without prejudice. Should Odicho believe he can cure the deficiencies with his constructive discharge and/or defamation claims described in this opinion, he may file a motion for leave to amend those claims limited to five pages and attaching the proposed amended allegations. Defendants should not respond to that motion unless the Court so orders. Odicho should be prepared to state whether he intends to file such a motion at the status hearing set for March 6, 2018.

ENTERED:

_Thomas M Durkin_
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: February 27, 2018